The People of the State of New York ex rel. Williams Engineering and Contracting Company, Respondent, v. Herman A. Metz, as Comptroller of the City of New York, Appellant.

1. Constitutional Law — Construction of Amendments to Constitution. In construing a constitution all its provisions relating directly or indirectly to the same subject must be read together, and any amendment in conflict with prior provisions must control. The presumption is that the people in exercising their supreme power, effected a definite purpose, and their command, made in the form provided by law, must be enforced by the courts.

2. Limitation of Hours of Labor on State and Municipal Work. The statute (L. 1906, ch. 506, § 3) amending the Labor Law enacts that no workman employed on state or municipal work or by a contractor or subcontractor doing work for the state or a civil division thereof "shall be permitted or required to work more than eight hours in any one calendar day" except in certain specified emergencies. This is a constitutional exercise of the legislative power expressly conferred by section 1 of article 12 of the State Constitution as amended.

3. Power of Legislature to Prohibit Payment for Work Done in Violation of Statute. It is within the sound discretion of the legislature to punish a violation of the provision limiting the hours of labor on public work by providing that no person or corporation shall be entitled to receive payment and no officer or agent of the state or a municipal corporation shall pay or authorize payment from funds under his control for work done upon any contract in which the eight-hour limit has been exceeded.

4. Power of State over Municipal Corporation — Equal Protection of the Law. The Constitution and statute relate only to public

work, or work done for or by the state or a civil division thereof, and the state may regulate and limit its own acts and the acts of the political divisions, unrestrained by any provision of the United States Constitution. The powers of municipal corporations may be restricted or enlarged or altogether withdrawn at the will of the legislature, and it belongs to the public to prescribe the conditions upon which it will allow work to be done on behalf of its municipalities; hence, the provision of the statute which makes eight hours "a legal day's work for all classes of employees in this State except those engaged in farm and domestic service," unless there is an agreement for overwork at an increased compensation, and restricting labor on public work or work done by or for the state or any civil division thereof to eight hours in any one calendar day, does not make such an arbitrary discrimination between persons employed by private individuals and persons employed by the state or municipal corporations as violates the provisions of the United States Constitution, prohibiting any state from denying to any person the equal protection of the laws.

5 EFFECT OF EXEMPTION OF CERTAIN EMPLOYEES FROM OPERATION OF STATUTE. The statute limiting the hours of labor on public work to eight hours in any one calendar day does not violate the provisions of the Federal Constitution guaranteeing the equal protection of the laws to all persons by reason of its exemptions. The classification effected by such exemptions is not arbitrary or capricious within the rule governing the subject for it has some reason to support it, and hence was within the power of the legislature. Furthermore, the state was dealing with its own agencies and had the right to promote its convenience and welfare by making such a distinction between its employees as their duties require.

6 WAIVER OF FORFEITURE. Assuming that a municipality has the power to waive the provision of the statute forbidding payment on a contract, upon which work has been done in violation of the eight-hour provision, it cannot be held to have waived such provision where its officers refused payment immediately upon learning that the statute had been disobeyed by the contractor.

*People ex rel. Williams Engineering & Contracting Co.* v. *Metz,* 126 App. Div. 912, reversed.

(Argued May 21, 1908. decided October 13 1908 )

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 1, 1908, which affirmed an order of Special Term granting a motion for a peremptory writ of mandamus to compel defendant to draw warrants on the chamberlain of the city of New

York for the payment of certain installments alleged to be due the relator on a city contract.

The facts, so far as material, are stated in the opinion.

*Francis K. Pendleton, Corporation Counsel (Theodore Connoly* of counsel), for appellant.    There is no legal identity between the contract abandoned by Flanagan and that let to the present relator.    (*Murphy* v. *Buckman,* 66 N. Y. 297; *Gillen* v. *Hubbard,* 2 Hilt. 304; *Matter of Leeds,* 58 N. Y. 402; *McChesney* v. *City of Syracuse,* 75 Hun, 503.)    The comptroller was compelled by the Labor Law to refuse the payment in question.    (*People ex rel. Cossey* v. *Grout,* 179 N. Y. 417; *People ex rel. Rodgers* v. *Coler,* 166 N. Y. 1; *Burns* v. *City of New York,* 121 App. Div. 180.)    The amended section 3 of the Labor Law does not deny to any person within this state the equal protection of the laws. (*Williams* v. *People,* 24 N. Y. 405; *People* v. *Havnor,* 149 N. Y. 195; *T. H. Dept.* v. *Moeschen,* 179 N. Y. 325; 203 U. S. 583; *People ex rel. Armstrong* v. *Warden,* 183 N. Y. 223; *Matter of Morgan,* 114 App. Div. 45; *Missouri* v. *Lewis,* 101 U. S. 23; *Barbier* v. *Connolly,* 130 U. S. 27; *Hayes* v. *Missouri,* 120 U. S. 68; *Mallett* v. *North Carolina,* 181 U. S. 589; *Atkin* v. *Kansas,* 191 U. S. 220.)    The new Labor Law is not in conflict with the 14th amendment of the Constitution of the United States as to taking property without due process of law.    (*Atkin* v. *Kansas,* 191 U. S. 207; *Keefe* v. *State,* 87 Pac. Rep. 791; *Matter of Broad,* 36 Wash. 449; *State* v. *Livingston,* 87 Pac. Rep. 980; *Jacobson* v. *Massachusetts,* 191 U. S. 11; *Lochner* v. *New York,* 198 U. S 45; *Reduction Co.* v. *S. R. Works,* 199 U. S. 306; *Moeschen* v. *T. H. Dept.,* 203 U. S. 583; *Ellis* v. *U. S,* 206 U. S. 246; *Muller* v. *Oregon,* 208 U. S. 412.)    There is no connection whatever between the obligations cast upon contractors for the city or the state and the exemptions of certain classes from the operation of the act.    (*People ex rel. Devery* v. *Coler,* 173 N. Y. 320.)

1908.]    People ex rel. W. E. & C. Co. *v.* Metz.    151

N. Y. Rep.]                Points of counsel.

*L. Laflin Kellogg* and *Alfred C. Petté* for respondent. The provisions of the Labor Law as re-enacted by chapter 506 of the Laws of 1906, limiting the hours of labor of employees on public work to not more than eight hours in any one calendar day and compelling the payment to such employees of not less than the prevailing rate of wages are unconstitutional and void. (*People ex rel. Rodgers* v. *Coler,* 166 N. Y. 1; *People ex rel. Treat* v. *Coler,* 166 N. Y. 144; *People* v. *O. C. R. C. Co.,* 175 N. Y. 84; *People ex rel. Cossey* v. *Grout,* 179 N. Y. 147; *C.,M. & S. P. R. Co.* v. *Minnesota,* 134 U. S. 418; *The Reagan Cases,* 154 U. S. 362; *Smyth* v. *Ames,* 169 U. S. 466; *Champion* v. *Ames,* 188 U. S. 321; *Matter of Jacobs,* 98 N. Y. 98; *People* v. *Marx,* 99 N. Y. 378.) The statute cannot be upheld as an exercise of the right of control by the state over municipal corporations. (*Maxmilian* v. *Mayor, etc.,* 62 N. Y. 160; *Ham* v. *Mayor, etc.,* 70 N. Y. 459; *Terhune* v. *Mayor, etc.,* 88 N. Y. 247; *Tone* v. *Mayor, etc.,* 70 N. Y. 157; *Smith* v. *City of Rochester,* 76 N. Y. 506; *People ex rel. Heiser* v. *Mayor, etc.,* 104 N. Y. 68; *Appleton* v. *Water Comrs.,* 2 Hill, 432; *Bailey* v. *Mayor, etc.,* 3 Hill, 538; *Walsh* v. *Trustees,* 96 N. Y. 428; *Walsh* v. *Mayor, etc.,* 107 N. Y. 220; *N. Y. & B. S. M. Co.* v. *Brooklyn,* 71 N. Y. 580; *Mayor* v. *T. N. Bank,* 111 N. Y. 446; *Missano* v. *Mayor, etc.,* 160 N. Y. 123.) The contract of the relator is in continuance of the contract entered into with the previous contractor, and as the original contract was entered into prior to the re-enactment of section 3 of the Labor Law, and was not subject to its provisions, so neither is the contract in suit. (*Murphy* v. *Buckman,* 66 N. Y. 297; *Matter of Leeds,* 53 N. Y. 402.) The city not having abrogated the contract for the failure of the contractor to comply with the statute, but having allowed the work to proceed and the amounts certified as due to be earned thereunder, must be held to have waived any defense based on the alleged violations of the Labor Law. (*Anderson* v. *Roberts,* 18 Johns. 529; *Terrill* v. *Auchauer,* 14 Ohio St. 80; *Green* v. *Kemp,* 13 Mass. 515; *St. L., V. & T. H. R. Co.* v. *T. H. & I. R.*

152    People ex rel. W. E. & C. Co. v. Metz.    [Oct.,

Opinion of the Court, per Vann, J.    [Vol. 193.

*Co.*, 145 U. S. 393; *Doster* v. *M. N. Bank*, 67 Ark. 325; *Armstrong* v. *W. M. M. Ins. Co.*, 95 Mich. 140; *Smith* v. *Sinclair*, 59 N. J. L. 84; *Small* v. *Clark*, 97 Me. 304; *Thornton* v. *McGrath*, 62 Ky. 349; *Ewell* v. *Daggs*, 108 U. S. 143; *Rex* v. *Inhabitants of Hipswell*, 8 Barn. & C. 471; *Pearse* v. *Morrice*, 2 Ad. & E. 94.) Unless the proper construction be that a contract is voidable only and not absolutely void for a violation of the law, then both article 14, section 1, of the Constitution of the United States, and article 1, section 6, of the Constitution of the State of New York, providing that no person shall be deprived of his property without due process of law, are clearly violated. (*People ex rel. Rodgers* v. *Coler*, 166 N. Y. 1; *People ex rel. Cossey* v. *Grout*, 179 N. Y. 417; *Conlon* v. *Lisk*, 153 N. Y. 188; *Lawton* v. *Steele*, 119 N. Y. 226; *Rockwell* v. *Nearing*, 35 N. Y. 302; *Gilman* v. *Tucker*, 128 N. Y. 199.)

Vann, J. This proceeding was initiated by an order made at a Special Term of the Supreme Court, requiring the comptroller of the city of New York to show cause why he should not be required to pay to the relator the sum of $9,634.75, as well as the further sum of $4,545.37, each being a partial payment upon a contract to complete the storm relief sewer in the borough of the Bronx. The facts were undisputed. It appeared that a prior contract, dated March 6th, 1906, had been made by one Flanagan to construct said sewer at unit prices estimated to amount to the sum of $635,844.36. After Mr. Flanagan had been paid $310,718.35 for partial performance of said contract it was declared abandoned by the city under a provision thereof authorizing such action in certain cases, and on the 6th of November, 1907, a new contract was made with the relator, as the lowest bidder after due advertisement, to complete the sewer for the lump sum of $428,831.50. Thereupon the relator entered upon the performance of its contract, and the sums mentioned in the order to show cause are respectively 85 per cent of the earliest amounts earned thereunder. They were payable as

soon as earned and were the only sums that had been earned when this proceeding was commenced.

Payment was refused by the comptroller upon the ground that the relator had violated a statute known as the Labor Law, in that it allowed its workmen to work more than eight hours a day when there was no extraordinary emergency and had failed to pay wages at the rate prevailing in the locality where the work was done. Both of these specifications were supported by proof and neither was denied by the relator. No explanation was given and no excuse presented. The relator, however, sought to justify its position on the grounds, *first*, that the Labor Law did not apply to the contract in question, because it was a continuation of that made with Flanagan before the Labor Law was passed; *second*, that the Labor Law is unconstitutional. The comptroller admitted the allegations of the relator that it had performed the work and earned the compensation claimed, but resisted payment solely upon the grounds mentioned.

The court at Special Term granted a writ of peremptory mandamus commanding the comptroller to pay the sums claimed by the relator, and upon appeal to the Appellate Division the order was affirmed. Two of the justices, however, dissented upon the ground that the Labor Law is constitutional and absolutely prohibits payment on the facts disclosed by the record.

The first ground upon which the comptroller resisted payment merits little attention. Whatever the rights of Flanagan, the first contractor, or his sureties may be as against the city, as to the relator the new contract is independent of the old and stands the same as if no other had been made. The relator sustains no relation to Flanagan or his sureties that is recognized by law. It is entitled to nothing for what he did and is responsible for no default of his. The old contract may be of importance to the old contractor in his relation to the city, but it is of no concern to the new contractor in its relations to the city. The contract of the relator is with the city alone and the old contract is referred to in the new only

to measure the work to be done thereunder. The relator agreed to do the work thus described and the city agreed to pay a fixed price therefor. The work has been partly done according to the contract and partial payment must be made as agreed unless the Labor Law now in force, which was passed after the date of the first contract and before the date of the second, intervenes and prevents. The only question, therefore, worthy of extended discussion, is whether that statute, is valid in so far as it regulates wages and hours of labor on public work.

The first Labor Law was passed in 1897, was twice amended in 1899 and once in 1900. (L. 1897, ch. 415; L. 1899, chs. 192 and 567; L. 1900, ch. 298.) In 1901 it was adjudged unconstitutional according to the Constitution as it then stood, *first,* because it required the expenditure of money of the city or that of the local property owners for other than city purposes; *second,* because it invaded rights of liberty and property in that it denied to the city and the contractor the right to agree with their employees upon the measure of their compensation. (*People ex rel. Rodgers* v. *Coler,* 166 N. Y. 1; *People ex rel. Treat* v. *Coler,* 166 N. Y. 144.)

After these adjudications and owing thereto the Constitution was amended for the purpose, as contemporary history and discussion in the legislature show, of authorizing such legislation. Prior to the amendment section one of article twelve was as follows: " It shall be the duty of the Legislature to provide for the organization of cities and incorporated villages, and to restrict their power of taxation, assessment, borrowing money, contracting debts, and loaning their credit, so as to prevent abuses in assessments and in contracting debt by such municipal corporations." By concurrent resolutions passed by the senate and assembly in 1902 and 1903 an amendment to said section was proposed, which was adopted by the People in 1905 and took effect on the first of January, 1906. (L. 1903, vol. 2, p. 1453.) That amendment added to the section as it previously stood the following: " and the Legislature may regulate and fix the wages or salaries, the hours of

work or labor, and make provision for the protection, welfare and safety of persons employed by the State or by any county, city, town, village or other civil division of the State, or by any contractor or sub-contractor performing work, labor or services for the State, or for any county, city, town, village or other civil division thereof."

In 1906, acting under the authority of this amendment, the legislature promptly re-enacted the material part of the statute which had been declared unconstitutional.   (L. 1906, ch. 506.) After referring to section three of that statute and reciting that the same " or a part thereof was heretofore declared unconstitutional by the Court of Appeals," it proceeded to re-enact said section in every substantial particular.   The first sentence is as follows : " Eight hours shall constitute a legal day's work for all classes of employees in this State except those engaged in farm and domestic service unless otherwise provided by law."   After thus fixing the number of hours which constitute a legal day's work in the absence of any agreement upon the subject, the legislature continued : " This section does not prevent an agreement for overwork at an increased compensation except upon work by or for the State or a municipal corporation, or by contractors or sub-contractors therewith.   Each contract to which the State or a municipal corporation is a party which may involve the employment of laborers, workmen or mechanics shall contain a stipulation that no laborer, workman or mechanic in the employ of the con-tractor, sub-contractor or other person doing or contracting to do the whole or a part of the work contemplated by the con-tract shall be permitted or required to work more than eight hours in any one calendar day except in cases of extraordinary emergency caused by fire, flood or danger to life or property. The wages to be paid for a legal day's work as hereinbefore defined to all classes of such laborers, workmen or mechanics upon all such public works, or upon any material to be used upon or in connection therewith shall not be less than the pre-vailing rate for a day's work in the same trade or occupation in the locality within the State where such public work on, about

or in connection with which such labor is performed in its final or completed form is to be situated, erected or used.    Each such contract hereafter made shall contain a stipulation that each such laborer, workman or mechanic, employed by such contractor, sub-contractor or other person on, about or upon such public work, shall receive such wages herein provided for. Each contract for such public work hereafter made shall contain a provision that the same shall be void and of no effect unless the person or corporation making or performing the same shall comply with the provisions of this section; and no such person or corporation shall be entitled to receive any sum nor shall any officer, agent or employee of the State or of a municipal corporation pay the same or authorize its payments from the funds under his charge or control to any such person or corporation for work done upon any contract, which in its form or manner of performance violates the provisions of this section, but nothing in this section shall be construed to apply to persons regularly employed in state institutions, or to engineers, electricians and elevator men in the department of public buildings during the annual session of the legislature nor to the construction, maintenance and repair of highways outside the limits of cities and villages."    (L. 1906, ch. 506, § 3.)

The importance of this statute leads us to proceed slowly in construing it and to pass upon no questions except such as are essential to the decision of the case in hand.    Therefore, we do not now decide whether the provision requiring certain stipulations to be inserted in the contract is directory or mandatory, nor express any opinion as to the provision relating to the prevailing rate of wages.    We confine our attention to the command that no workman upon public work "shall be permitted or required to work more than eight hours in any one calendar day," except in contingencies not now material.    Did the legislature have power to make that command and to prohibit payment by its own municipal authorities, even for work actually done, unless it was obeyed?    If it had, it is clear that the comptroller was justified in refusing to issue

warrants for the payment of the relator's claims and that the writ requiring him to do so was improperly issued. The requirement is no broader than the Constitution and is clear and specific that no laborer, workman or mechanic shall be permitted or required to work more than eight hours in one calendar day; that no person or corporation shall be entitled to receive payment and no officer, agent or employee of the state or of a municipal corporation shall pay or authorize payment from funds under his control " for work done upon any contract, which in its form or manner of performance violates the provisions of " said section. The words "manner of performance" manifestly refer, among other things, to the number of hours *per diem* that laborers are allowed to work.

The relator claims that this legislation violates both the State and Federal Constitutions in that it conflicts with the fundamental guarantees relating to liberty and property; with the provisions in regard to home rule and with the prohibition against the use of the money of a city except for a city purpose, contained in the former, and with the fourteenth amendment of the latter.

In construing a constitution all its provisions relating directly or indirectly to the same subject must be read together and any amendment in conflict with prior provisions must control, as it is the latest expression of the people. The power to fix and regulate the hours of labor upon public work was intrusted to the legislature by the amendment which took effect on the first of January, 1906. Prior to that date the power did not exist and, hence, certain decisions made under the Constitution before it was thus amended do not now apply. (*People ex rel. Rodgers* v. *Coler*, 166 N. Y. 1; *People ex rel. Treat* v. *Coler*, 166 N. Y. 144; *People v. Orange County Road Construction Company*, 175 N. Y. 84; *People ex rel. Cossey* v. *Grout*, 179 N. Y. 417.) The Constitution, as construed by these decisions and others, was amended because it did not confer power upon the legislature to fix and regulate the hours of labor in doing public work or the

wages to be paid therefor. When, therefore, the Constitution as it stood before it was amended is read in connection with the amendment and in the light of the judicial decisions which led thereto, it is clear that the people intended to authorize such legislation as the provision relating to hours of labor now under consideration. They did not require any action upon the subject but merely authorized it. Their command was that "the Legislature may regulate and fix the wages or salaries, the hours of work or labor, and make provision for the protection, welfare and safety of persons employed by the State," etc. "Regulate" and "fix" are strong words and were used with the definite purpose of meeting the situation created by our decisions. We had held that the legislature had no power to pass the Labor Law of 1897 and the amendment was designed to authorize a law of that kind. The legislature acted under the amendment and re-enacted the precise law the overthrow of which by the courts made the amendment necessary. Those provisions of the Constitution which were violated by the Labor Law of 1897 were not violated by the Labor Law of 1906, so far as we are now treating it, because in the meantime the Constitution had been so amended as to modify said provisions by authorizing the legislature to regulate and fix the hours of labor upon public work. Unless the amendment did this it did nothing, and the Constitution is the same in effect as it was before. The presumption is that the people in exercising their supreme power did not do a vain act, but effected a definite purpose.

Freedom of contract still exists, but not to the same extent as formerly, because the people have commanded that that right must yield so far as reasonably necessary to enable the legislature to fix and regulate the hours of labor on work done for the state or any civil division thereof. The same is true of the other provisions of the Constitution which were relied upon by us in passing on the Labor Law of 1897. Every provision of the Constitution as it was before it was amended which so conflicts with the amendment that it cannot be fairly

harmonized therewith, necessarily yields thereto, but only to the extent necessary to make the amendment reasonably effective.

As the legislature has power to regulate and fix the hours of labor on public work, it has the incidental power to compel obedience to its commands by mild or severe penalties, as it sees fit. The method of enforcement is for it to determine. It can make violation a crime punishable by fine or imprisonment or both, or provide for a forfeiture of the contract, or prohibit payment for work done thereunder. All this is within its sound discretion. The prohibition of payment under certain circumstances by the Civil Service Law is quite analogous. The legislature is not required to act under the amendment at all, and any action taken if unsatisfactory to the public either in principle or detail can be retracted at any time in response to public opinion. If the legislation retards public improvements or increases municipal debts, or does not work well in other respects, there is ample room for public sentiment to act through the chosen representatives of the people.

Our conclusion upon this branch of the case is that in view of the history of the amendment in question and the causes which led to it the legislature now has power and had when the present Labor Law was enacted to fix and regulate the hours of labor on public work by limiting them to eight hours in one calendar day and to provide that when that limit is exceeded no officer of state or municipal government shall be permitted to pay therefor from funds under his official control. We do not uphold the Labor Law as constitutional to the limited extent that we pass upon it at all, because it is authorized by the police power which belongs to the state, for we cannot see that it bears any reasonable relation to the public health, safety or morals. The reasoning of Chief Judge CULLEN in the *Orange County Road* case is conclusive upon that subject. (*People* v. *Orange County Road Construction Company*, 175 N. Y. 84, 87.) We uphold the statute simply because the people have so amended the Constitu-

tion as to permit such legislation. The command of the people made in the form prescribed by law must be enforced by the courts.

It is claimed that the Labor Law violates the first section of the fourteenth amendment to the Constitution of the United States in so far as it provides that "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

It is urged that the Labor Law makes discriminations when there are no differences; that it arbitrarily discriminates between persons employed by private individuals and those employed by the state or by municipal corporations, and with no adequate reason exempts from the latter three classes of persons. It is insisted that it is a capricious distinction to permit a laborer digging ditches for a farmer to agree to work ten hours a day, while if he does the same kind of work just across the line for a city he cannot agree to work more than eight hours even if he wishes to work longer and the city is willing to pay him all he asks.

One purpose of the fourteenth amendment is to prevent state legislatures from making discriminations without any basis; in other words, to do away with class legislation. Following the decisions of the Supreme Court of the United States upon the subject we have held that there must be some basis for classification, but that a basis is sufficient, even if it seems unreasonable to the courts, provided there is reason enough for it to support an argument so that it could have seemed reasonable to the legislature. (*People ex rel. Hatch* v. *Reardon,* 184 N. Y. 431; *People ex rel. Farrington* v. *Mensching,* 187 N. Y. 8.)

In the latter case we said that "There must be some support of taste, policy, difference of situation or the like, some reason for it even if it is a poor one. * *. * The court must be able to see that the legislators could regard it as

reasonable and proper without doing violence to common sense."

It is to be observed that the amendment to our State Constitution which we have had under consideration relates only to public work, or work done for the state or for one of the political divisions created by the state, such as a county, city, town or village. The Labor Law follows the Constitution as amended in this respect. In other words, the state was dealing with itself and with its own creatures when its legislature passed that portion of the Labor Law that we are now considering. As was recently said by the highest Federal court: " Municipal corporations are political subdivisions of the State, created as convenient agencies for exercising such of the governmental powers of the State as may be intrusted to them. * * * The number, nature and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State. * * * The State, therefore, at its pleasure may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the State is supreme, and its legislative body, conforming its action to the State Constitution, may do as it will, unrestrained by any provision of the Constitution of the United States." (*Hunter* v. *Pittsburgh*, 207 U. S. 161, 178.) This language, of course, refers to the limitations of the Federal Constitution only.

We regard discussion of the question involving discrimination between persons employed by private individuals and those employed by municipal corporations as foreclosed by the decision of the Supreme Court of the United States in *Atkin* v. *Kansas* (191 U. S. 207, 220). That case is directly analogous for it involved the constitutionality of a statute of

11

the state of Kansas which provided that eight hours should
constitute a day's work for all laborers employed by or on
behalf of the state or any of its municipalities and made it
unlawful for any one thereafter contracting to do public work
to require or permit a laborer to work longer than eight
hours a day.  A violation of this provision was made a crime
punishable by a fine of not less than fifty dollars nor more
than one thousand dollars or by imprisonment for not more
than six months or by both such fine and imprisonment in the
discretion of the court.  The plaintiff in error, a contractor for
public work in Kansas City, was convicted of permitting one
Reese, an employee, to voluntarily work ten hours a day in
laying a pavement and was fined one hundred dollars.  The
conviction was sustained.  In that case, as in this, counsel
argued that " if a statute such as the one under consideration
is justifiable, should it not apply to all persons and to all voca-
tions whatsoever?  Why should such a law be limited to
contractors with the state and its municipalities?  Why should
the law allow a contractor to agree with a laborer to shovel
dirt for ten hours a day in the performance of a private con-
tract, and make exactly the same act under similar conditions
a misdemeanor when done in the performance of a contract
for the construction of a public improvement?  Why is the
liberty with reference to contracting restricted in the one case
and not in the other?"

The court after reciting these questions asked by counsel
answered them as follows: "These questions, indeed, the
entire argument of defendant's counsel, seem to attach too
little consequence to the relation existing between a state and
its municipal corporations.  Such corporations are the crea-
tures, mere political subdivisions of the state for the purpose
of exercising a part of its powers.  They may exert only such
powers as are expressly granted to them, or such as may be
necessarily implied from those granted.  What they law-
fully do of a public character is done under the sanction of
the state.  They are, in every essential sense, only auxiliaries
of the state for the purposes of local government.  They may

be created, or, having been created, their powers may be restricted or enlarged or altogether withdrawn at the will of the legislature.   The authority of the legislature, when restricting or withdrawing such powers, being subject only to the fundamental condition that the collective and individual rights of the people of a municipality shall not thereby be destroyed.   *   *   *   If, then, the work upon which the defendant employed Reese was of a public character, it necessarily follows that the statute in question, in its application to those undertaking work for or on behalf of a municipal corporation of the state, does not infringe the personal liberty of any one.   *   *   *   Whatever may have been the motives controlling the enactment of the statute in question, we can imagine no possible ground to dispute the power of the state to declare that no one undertaking work *for it or for one of its municipal agencies,* should permit or require an employee on such work to labor in excess of eight hours each day and to inflict punishment upon those who are embraced by such regulations and yet disregard them.   It cannot be deemed a part of the liberty of any contractor that *he* be allowed to do public work in any mode he may choose to adopt without regard to the wishes of the state.   On the contrary, it belongs to the state, as the guardian and trustee for its people, and having control of its affairs, to prescribe the conditions upon which it will permit public work to be done on its behalf, or on behalf of its municipalities.   No court has authority to review its action in that respect.   Regulations on this subject suggest only considerations of public policy and with such considerations the courts have no concern.

If it be contended to be the right of every one to dispose of his labor upon such terms as he deems best, as undoubtedly it is, and that to make it a criminal offense for a contractor for public work to permit or require his employee to perform labor upon that work in excess of eight hours each day is in derogation of the liberty both of employees and employer, it is sufficient to answer that no employee is entitled, of absolute right and as a part of his liberty, to perform labor for the

state; and no contractor for public work can excuse a violation of his agreement with the state by doing that which the statute under which he proceeds distinctly and lawfully forbids him to do." This decision was cited with approval in the somewhat analogous case of *Ellis* v. *United States* (206 U. S. 246, 255).

We close this branch of the discussion by quoting from the latest utterance upon the subject by the court of last resort upon Federal questions to which our attention has been called: " It is undoubtedly true, as more than once declared by this court, that the general right to contract in relation to one's business is part of the liberty of the individual, protected by the Fourteenth Amendment to the Federal Constitution; yet it is equally well settled that this liberty is not absolute and extending to all contracts, and that a State may, without conflicting with the provisions of the Fourteenth Amendment, restrict in many respects the individual's power to contract." (*Muller* v. *Oregon*, 208 U. S. 412, 421.)

The relator claims that it is denied the equal protection of the laws because all in the same class are not treated alike, inasmuch as persons regularly employed in state institutions, engineers, electricians and elevator men in the department of public buildings during the annual sessions of the legislature and those engaged in the construction, maintenance and repair of highways outside the limits of cities and villages, are exempted from the operation of the Labor Law.

We do not regard this classification as arbitrary or capricious within the rule governing the subject, for it has some reason to support it and, hence, was within the power of the legislature. Employees with duties to be discharged in the night time, or partly by day and partly by night, as in asylums, prisons and the like, and those who operate the machinery for heating and lighting the state capitol when the legislature is in session, may properly receive separate classification in order to prevent public injury and inconvenience. Here, also, the state was dealing with its own agencies and had the right to promote its convenience and welfare by

making a distinction between those who perform manual labor for the most part and those who work largely with their brains.   The one class of duties involves greater bodily fatigue than the other and as positions in state institutions are regarded as higher in rank and less exacting, they are eagerly sought for as more desirable.

The exemption of those employed in working upon highways outside the limits of cities and villages, apparently applies only to employees of counties and towns, or of the state, or contractors therewith, as in building and repairing state roads and the like.   This is in conformity with the custom in rural districts, where, as it may be argued, the crops could neither be planted nor gathered by laboring but eight hours a day.   The reason for the distinction may not be conclusive, but it will support an argument, which is sufficient. Moreover the employees in the exempt classes, as a rule, work away from home, under circumstances, conditions and surroundings which differ from those affecting employees working near their homes in cities and villages.   The law requires equality only among those similarly situated, and this rule, we think, was observed by the statute in question.

We have thus considered the subject of discrimination along the line of discussion adopted by counsel, but we regard it as of slight importance in this case because in the legislation in question the state was dealing with its own creations and could discriminate as it saw fit.

The contention that the city has waived any defense under the Labor Law by allowing the work to proceed and retaining the benefit thereof, is unsound.   The work in question was done in December, 1907, and January, 1908, and it is all that had been done under the new contract when this proceeding was commenced.   So far as appears the first knowledge the city had that the contractor had violated the Labor Law was on February 4th, 1908, when the president of the borough received notice thereof from the department of labor.   He at once caused an investigation to be made and the last report of his agents was dated February 14th, 1908.

Thereupon the comptroller asked the advice of the corporation counsel and upon receiving it refused to pay the claims in question. It does not appear when the certificates of the engineer in charge that enough work had been done to entitle the contractor to a partial payment were received by the comptroller. This proceeding was commenced on the 29th of February, 1908.

Under these circumstances, even if the city had power to waive, there was no waiver, for its officers acted as soon as they reasonably could. If the contract was void on its face, and as to this question we express no opinion, there was no occasion for action by the comptroller. If it was valid, and he was required to act at all, he acted in time by refusing payment as soon as he learned the facts.

We think that, upon the facts as presented by the record before us, the comptroller was prohibited by a valid statute from paying any part of the relator's claims, and, hence, the orders below directing him to do so must be reversed and the proceeding dismissed, with costs in all courts, without prejudice to an application for an alternative writ of mandamus or to the institution of an action to recover the claim.

CULLEN, Ch. J., GRAY, WERNER, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Orders reversed, etc.