CHAMBERS, Plaintiff-Appellant, v. OWENS-AMES-KIMBALL COMPANY, et al., Defendants-Appellees.

Ohio Appeals, Second District, Franklin County.

No. 3800. Decided August 4, 1945.

Dale Stump and C. J. Wardlow, Columbus, for plaintiff-appellant.

T. J. Duffy, Columbus, for Ohio State Federation of Labor.

Hugh S. Jenkins, Atty. Genl., Columbus, and John M. Woy, Bureau of Unemployment Compensation, Columbus, for Board of Review, Ohio Bureau of Unemployment Compensation.

## OPINION

By HORNBECK, P. J.

This is an appeal on questions of law from a judgment of the Common Pleas Court, Franklin County, affirming a decision of the Board of Review in the cause.

Three errors are assigned, the first two being general and based upon the claim that the judgment of affirmance is contrary to law and not in accord with the evidence. The third assignment is, that the Court erred in holding that the construction of §1345-6-e and e (1) GC as claimed by the appel-

lant would be in conflict with the Constitutions of Ohio and the United States.

The facts essential to an appreciation of the question presented are that, for twenty-seven years and at the time of the proceeding under consideration, appellant was a member of the Local Carpenters' Union No. 200 (A. F. of L.). On December 9, 1942, appellant became unemployed, applied for and was allowed benefits by the Bureau, but eventually the benefits were ordered stopped by the Board of Review because he refused to accept an offer of work to which he was referred by the Bureau. The job to which appellant was referred was nonunion and he refused to accept it because of that fact and because, under the rules of the union, if he had begun the employment he would have been subject to fine, suspension or expulsion and the resultant loss of privileges and benefits incident to union membership. The nonunion wage, less than union scale, which appellant would have received had he taken the job tendered is not an issue.

The primary question presented by the appeal requires determination of the meaning and application to the facts of §1345-6-e and e (1) GC which read:

"(e)  No individual otherwise qualified to receive benefits shall lose the right to benefits by reason of a refusal to accept new work if:

(1)  as a condition of being so employed he would be required to join a company union, or to resign from or refrain from joining any bona fide labor organization, or would be denied the right to retain membership in and observe the lawful rules of any such organization; * * *."

The contentions of the parties revolve around the language "as a condition of being so employed", the Bureau insisting that it means a condition imposed by the employer as a part of the contract of employment, as if the section read,—as a condition of the contract by which the employee is tendered employment. It is the claim of the appellant that "condition of being so employed" means condition which inheres in the entering upon or carrying out of the employment, as if it read,— as a condition of being in the employment.

Through Mr. Waller, business representative and financial secretary of Carpenters' Union No. 200, the rule controlling the situation had appellant taken the job offered, is set forth and provides in part:

"No member of Local Union No. 200 **will be permitted** to work on jobs where nonunion carpenters are working or for an

employer who employs nonunion carpenters, * * *." (Emphasis ours.)

There are a few reported cases which throw some light upon our question. In McCluskey v Cromwell, 11 N. Y. (1 Kern), 593, 599, the action was to recover on a bond given by a contractor to secure payment of wages of laborers employed on public works. It was held that language in the bond "by laborer employed" was meant those hired by the contractor, working at his request, and under agreement on his part to compensate them. In Re Estate Cormick; Cormick, Appellant, v. First Trust Company of Omaha (Neb.) 160 N. W. 989, the action was against an estate in which it was plead that,

"At the special instance and request of the said Thomas Cormick, your petitioner became 'employed' by the said Thomas Cormick," etc.

In the course of the opinion in discussing the issue it is said:

"To be 'employed' in anything means not only the act of doing it, but also to be engaged to do it, to be under contract or order to do it". Citing U. S. v Morris, 14 Pet. 464, 475; 10 L. Ed. 543, 549. To like effect is Cox v Brown, (Mo.) 50 S. W. (2d) 763, 764.

In Independent Transportation Co. (District Court), 173 Fed. 564, the syllabus reads:

"The word 'employed' is a verb of past and present tense, and cannot be accurately used potentially to indicate future action unless qualified by additional words."

The suit was on maritime policies and the following warranty clause "Vessel warranted 'employed' in the general passenger and freighting business on Puget Sound, * * *." It was the claim of the insurance company that the warranties related to future employment of the vessel during the life of the policies and should be interpreted to read "vessel warranted to be employed", etc. The Court held that interpolation of the words "to be" would materially change the meaning of the clause and would not be permissible. In the language under consideration in the instant case the statute has the qualifying words "of being", namely condition "of being employed".

Inasmuch as the language is conceded to be ambiguous

what are the probabilities as to its meaning? The statute was enacted as a part of the Ohio Unemployment Compensation Law. The Bureau of Unemployment Compensation administers a fund made up in large part by contributions from employers, from which fund, under conditions set out in the act, employees are paid while they are unemployed. If an employee who is on benefits is tendered employment under the conditions of the act he must accept or cease to receive payment from the fund.

One of the principal duties of the Bureau is to find suitable employment for unemployed working men who otherwise would be depleting the funds administered by the Bureau. The work then of this Commission not only relates to unemployment but to employment and the status in which an employee finds himself if he is out of a job,—when he is unemployed, and which he attains if he is on a job,—when he is employed. Thus the emphasis in the legislation relating to the Unemployment Compensation Act and the condition of employment would not be placed upon a contract by which a man was to be employed but upon his status when he is on the job and working. The Act itself, §1345-1 GC, defines employment as "services performed for wages under any contract of hire, written or oral, express or implied, * * *:" shall include an individual's "entire service performed within or both within and without the state", with qualifications. Frequently the Act speaks of "employment" as service performed. (Emphasis ours.) As Judge Sherick says, Iden v State, 71 Oh Ap 72.

"The statutory term 'employment', describes the station or situation in which an 'employee' finds himself."

At the time that the section under consideration, §1345-6 GC, was enacted there was and had been in the Code since August 6, 1931, §6241-1 GC, which provides:

"Every undertaking or promise hereafter made, whether written or oral, express or implied, constituting, or contained in, any contract or agreement of hiring or employment between any individual, firm, company, association or corporation, and every employe or prospective employe of same, whereby (a) either party to such contract or agreement undertakes or promises not to join, become, or remain, a member of any labor organization or of any organization of employers, or (b) either party to such contract or agreement undertakes or promises that he will withdraw from the employment relation in the event that he joins, becomes, remains a member of any labor

organization or of any organization of employers, is hereby declared to be contrary to public policy and wholly void."

This legislation is pertinent to our question. It discloses that the Legislature knew how to phrase and state in appropriate language a provision of law relating to contracts or agreements of hiring or employment to which the section expressly and explicitly relates. It is logical to infer that if the lawmakers intended in the section under consideration to mean contract of employment, it would have said so. This section, §1345-6 GC, has application only to consummated or executed contracts of employment or hire and does not reach proposals to contract or extend to any condition resulting by reason of the actual employment.

With full knowledge then of the fact that there was on our statutes an express provision regulating and controlling the entering into of **contracts** of employment or hire the Legislature chose the language under consideration, namely, "no individual * * * shall lose the right to benefits by reason of refusal to accept new work, if as a condition of being **so** employed", etc. (Emphasis ours.) That is to say, if as a condition of "being employed" in the new work to which he was referred, he would be required to do that which was set forth in the remaining portion of the statute, his refusal to accept such new work would not cause him to lose the benefits of unemployment compensation. It is the refusal to go on the job and take the employment which gives the section effect.

It will be noted that the mere fact alone that the employee by accepting the employment tendered would violate some lawful rule of his organization is not sufficient to support his refusal to accept the job, but it must also appear that he would be denied the right to retain membership in his organization. Both of these conditions must attend before the language of the section may be invoked in his behalf. The language adds another and a third condition to e (1), the first being, (1) that an employee may not be required to **join** a company union or (2) **resign from** or **refrain** from joining any bona fide labor organization, and the third, now carried into the Act, that one who is a member of the union may not be required to take a job if thereby he would be denied the right to **retain membership** in * * * such organization. (Emphasis ours.) Obviously, his denial of the right to membership would result because of the violation of some rule of the organization pertaining thereto.

It is our judgment that the "condition of being so employed" means the condition arising by reason of the actual employ-

ment, actual work on the job. If it does not have this meaning it has little or no effect in the administration of the Act. The union does not suspend or expel a member for the agreement or contract to go onto a job that is nonunion. It is the act of doing the work or entering into the employment on a prohibited job which brings into operation the penalty against him. If the employee accepted the contract so conditioned as to make the section applicable upon the theory of appellee, such acceptance would then complete a contract in violation of §1635-6 GC, a situation which, in all probability, the Legislature never had in mind.

We are of opinion that, subject only to its constitutionality, the section under consideration requires the construction claimed for it by the appellant.

The Board of Review gave no consideration to the question of the constitutionality of §1345-6-e and e (1) GC because in the view adopted by it it was not necessary and it was not urged before it. The Common Pleas Judge, however, invoked the well recognized principle of statutory construction that where the language of an act renders its meaning doubtful it will be given such construction, if possible, as will avoid conflict with the Constitution. Lewis' Sutherland Statutory Construction, Vol. I, Sec. 83.

Counsel for the Board of Review insists and the Common Pleas Judge held that the construction claimed by the appellant would cause the section to be unconstitutional, in violation of **Sec. 2, Art. I,** of the **Ohio Constitution** and the 14th Amendment to the United States Constitution in that it would deny the equal protection of the laws; that the placing of union members and nonunion members in different classifications was an invalid and unconstitutional classification and that the sections constituted an illegal delegation of legislative power to labor organizations.

We revert to the fact that the Unemployment Compensation Act sets up a special fund known as the Unemployment Administrative Compensation Fund in which is available to the Bureau all moneys received from the Federal Government, or any agency thereof, or which are appropriated by the state for the purposes described in §§1345-2-15 GC, and contributions collected from employers. The administrator is required to keep the total expenditures within the limits of the fund and may at any time, if it is in danger of becoming actuarily unsound, reduce payments, and the State assumes no liability beyond the amounts paid into the fund. Thus there is set up a special fund made up largely from contributions of employers of all classes of labor for the benefit

Errata:—In line 10 (above) the cited section of the General Code should read §6241-1 GC, instead of §1635-6 GC.

of their employees and for their general welfare, under the authority of **Sec. 34, Art. II of the Ohio Constitution.**

The right of the workingmen to organize and to bind themselves by rules, constitutions and bylaws is recognized as valid both by state and federal legislation and by the Courts, **24 O Jur 631.** There is a well recognized differentiation between classes of labor, union and nonunion, and even among union organizations. Manifestly, there must be wide latitude of selection for purposes of classification left to the Legislature and it is only when that power of selection has been abused that the Courts may interfere. **List v Burley Tobacco Growers' Co-Operative Assn., 114 Oh St 361; Xenia v Schmidt, 101 Oh St 437.** A classification of employees recognizing their union and non-union status would be in accord with that which is commonly accepted in industry today.

In People v Metz, (N. Y.) 85 N. E. 1070, 24 L. R. A. N. S., 201, it is said:

"A statute will be sustained where the basis for classification made by it could have seemed reasonable to the Legislature, even though such basis seems to the Courts to be unreasonable."

And in New York Rapid Transit Corporation v City of New York, 303 U. S., 573, 58 S. Ct., 721, it is held that:

"The legislative judgment as to classification will be upheld if any state of facts reasonably can be conceived that would sustain it."

Applying these principles to the sections of the Code under consideration there appears to be reasonable basis for the classification adopted by the Legislature and there is support for the conclusion that the general welfare of the employees, both union and nonunion, who are beneficiaries under the act, would thereby be subserved.

The Act at the time that the controversy in the instant cause arose provided for maximum payment each year of not to exceed eighteen times the employee's weekly benefit which in this case is a maximum of $288.00 for the applicant had he been unemployed for the whole year. Obviously, there is no such inducement in the benefits to be paid an unemployed beneficiary as compared to his normal earnings as would move him to continue under such payments if he could be employed at regular wage.

The Legislature had this to consider and likewise had to

determine public policy respecting situations which would confront union employees who, to receive the benefits of the Act, might be required to yield up greater advantages and benefits, financial and otherwise, which had accrued to them by reason of their union affiliations.

It is not a departure in legislation to accord certain advantages to those who come within a designated class. The unemployment compensation law itself makes such distinction. Sec. 1345-1 GC defines a veteran and accords to him certain advantages not granted to other employees, and in §1345-6 GC the waiting period which is exacted from employees generally is not required of any veteran.

This Court has held constitutional §486-10 GC which accords to a veteran in a civil service examination an additional 20% if he receives a passing grade. King v Emmons, 38 L. R. 273. In the Federal Unemployment Tax Act, Section 1603, it is provided that:

"(5) Compensation shall not be denied in such State to any otherwise eligible individual for refusing to accept new work under any of the following conditions:

(A) If the position offered is vacant due directly to a strike, lockout, or other labor dispute;

(B) if the wages, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality;

(C) if as a condition of being employed the individual would be required to join a company union or to resign from or refrain from joining any bona fide labor organization;"

Our state act, §1345-6-e (1) GC:

"d. Notwithstanding the provisions of subsection (a) of this section, no individual may serve a waiting period or be paid benefits for the duration of any period of unemployment with respect to which the administrator finds that such individual:

(1) lost his employment or has· left his employment by reason of a labor dispute (other than a lockout) at the factory, establishment, or other premises at which he was employed, as long as such labor dispute continues."

Obviously, much of this legislation can be given application only to union employees. and is as open to the claim of discrimination as is the language of the section immediately under consideration.

. It is further urged that the section may not be enforced because it would require the Commission to make factual determination whether or not an unemployed union employee would be denied the right to retain membership in and observe the lawful rules of his organization. It is true that such determination would have to be made, but, when the question arose, it would probably be incumbent upon the employee to establish that he came within the exception of §1345-6-e (1) GC. The same objection can be urged to that portion of Section 1603 of the Federal Unemployment Tax Act and §1345-6-e-d (1)· GC, which we have heretofore quoted. Likewise, upon the construction of §1345-6-e (1) GC contended for- by the Commission, if a contract was tendered to an employee which it was claimed brought him within an exception of the section under consideration, it would be incumbent upon the Commission to consider and determine if, in fact, the claim was well made.

· The Act very fully and comprehensively sets up the machinery whereby the Commission may make determination of any fact which is essential to its application.

· Considerable reliance is placed by appellees upon two Ohio cases under the same title, **State, ex rel., v State Office Building Commission, et al., 124 Oh St 413,. and 125 Oh St 301;** the first case, decided on a demurrer to the petition; the second, on demurrer to the answer. The facts developed were that the Commission refused upon its own rules to award a construction contract to the lowest bidder upon the sole ground "that they could not award the said contract to relator because it did not employ exclusively union men".

In these cases the Commission was charged with the observance of a specific statute which provided that public contracts should be let to the lowest and. best bidder. The Court held that to ignore this statute was a discrimination in conflict with our **Constitution, Art. I, Sec. 1.** The difference in the facts between the cited case and the instant case have been adverted to in this opinion. Here the Bureau is administering a fund created for the benefit of employees, and under direct specific statutory authority as to the classes to which it shall be distributed. By permitting an employee to refuse work tendered to him under the conditions of the section under consideration does not deny another employee of a different classification the right to accept the benefits of the act.

But the principal question presented here relates to the application of the Fourteenth Amendment of the Federal Constitution to the legislation under consideration, as to which adjudications by the United States Supreme Court are binding

upon us and the state courts. The case to which we hereinafter refer, even if in conflict with State, ex rel. v Building Commission, would control our decision upon the federal constitutional question.

Obviously, cases of most value are those which consider and adjudicate the identical question before the court. We have found such a case, which was not cited by counsel, by the Board of Review nor the Common Pleas Judge. Associated Industries of New York State, Inc., v Department of Labor of State of New York, et al., 271 N. Y. 1, 2 N. E. (2d) 22, 106 A. L. R. 1519. The Court rendered a declaratory judgment on the petitions and cross-petitions as to the constitutionality, under the federal and New York state Constitutions, of the New York Unemployment Insurance Law. The Act is set out fully and among other parts thereof under consideration was paragraph 506 1 (a), which provided:

"1. No benefits shall be payable to any employee who refuses to accept an offer of employment for which he is reasonably fitted by training and experience, including employments not subject to this article; provided, however, that no employee otherwise qualified to receive benefits shall lose the right to benefits by reason of the refusal to accept employment if

(a) Acceptance of such employment would either require the employee to join a company union or would interfere with his joining or retaining membership in any labor organization."

This section among others was expressly challenged as being unconstitutional in two of the particulars asserted in the instant appeal. The majority opinion says:

"No law can act with certainty; it measures reasonable probabilities. 'Judicial inquiry does not concern itself with the accuracy of the legislative finding, but only with the question whether it so lacks any reasonable basis as to be arbitrary.' " Standard Oil Co. v Marysville, 279 U. S. 582.

And,

"So, too, the right to refuse other work of a certain kind when offered has come in for criticism. There may be a diversity of views as to the wisdom of these provisions, but again, these are not matters for the courts to consider unless they become so extreme as to become arbitrary.

"* * * Here we are dealing simply with the power of the Legislature to meet a growing danger and peril to a large number of our fellow citizens, and we can find nothing in the act itself which is so arbitrary or unreasonable as to show that it deprives any employer of his property without due process of law or denies to him the equal protection of the laws."

This judgment was taken to the United States Supreme Court on appeal and there by a per curiam was affirmed by an equally divided court, 299 U. S. 515; 57 .S. Ct. 122. The language of Section 506 1 (a), New York statutes, is in meaning substantially the same as is found in our §1345-6-e (1) GC. The provision of the New York Act was that ·an employee would not be required to accept the employment proffered if it "would interfere with his joining or retaining membership in any labor organization". Obviously, whether or not the acceptance of such employment would interfere with the employee's retaining membership in any labor organization would require determination if such acceptance would violate any lawful rule of his labor union. This case in our judgment is dispositive of our question and requires us to hold that the legislation in question is not unconstitutional in any of the particulars asserted by the appellee.

There is another case which is helpful and inferentially tends to support our conclusion, Carmichael v Southern Coal and Coke Co.,— U. S.—, 57 S. Ct. 868, 109 A. L. R., 1327. The United States Supreme Court there had under consideration the Alabama Unemployment Compensation Act and in an extended opinion considered the constitutional aspects of the Act in many particulars. The due process and equal protection clause of the Fourteenth Amendment were invoked against the legislation but the Court held it to be constitutional. The questions presented were not the same as we find here, but the opinion cannot be read without the conviction that the Court's attitude would be to support any reasonable classification which the Legislature adopts. Early in the decision Mr. Justice Stone, speaking of exemptions from the operation of a tax imposed on members of a class, says:

"A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it."

The rationale of. the opinion in our judgment strengthens our conclusion. The judgment will be reversed and cause remanded.

GEIGER and MILLER, JJ., concur.