State ex rel. Burke v. Hinkel, 144 Wis. 444.

STATE EX REL. BURKE, Respondent, vs. HINKEL, City Clerk, Appellant.

*December 8, 1910—January 10, 1911.*

*Constitutional law: Justices of the peace: Jurisdiction: Statutes: Partial invalidity: Elections: Mandamus: Appeal after election.*

1. An act (ch. 544, Laws of 1909) providing in substance that in counties having a population of 150,000 or over justices of the peace thereafter elected should have jurisdiction only in actions in which the amount claimed or involved did not exceed one dollar, and that such justices in cities of the first class should receive an annual salary of $25 in lieu of fees, and should not practice as attorneys in any courts of the county, but should each hold court and keep it open for business for at least six hours in each day for eleven months in the year, is *held* invalid as a violation or attempted evasion of secs. 2, 15, art. VII, Const., which invest justices of the peace with judicial power and provide that they shall be elected in towns, cities, and villages in such manner as the legislature may direct and their number and classification shall be regulated and their jurisdiction prescribed by law.

2. The void parts of such act embrace the dominant purposes thereof and, being the inducements to the enactment of the other portions, the whole act is void.

3. Although in a proceeding by *mandamus* to compel the placing of relator's name on a primary ballot there were delays so that the primary and the election passed, and the trial court thereafter adjudged that relator would have been entitled to the writ and awarded costs to him, the questions involved are properly before the supreme court on appeal from such judgment.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Affirmed.*

The amended petition in this proceeding alleges that between the 1st day of February and the 7th day of March, 1910, the petitioner was nominated for the office of justice of the peace on the Democratic ticket in the Fourth district, composed of the Fourth and Sixteenth wards of the city of Milwaukee, and that his nomination papers were duly and properly signed by a sufficient legal number of qualified electors;

that the petitioner has accepted the nomination and has· signed a written declaration that if elected he would accept the office; that the nomination papers and the above mentioned declaration had been tendered to the city clerk and that the city clerk had refused to receive them; and that the clerk refuses to place the petitioner's name on the primary ballot or on the voting machines as a candidate for the office. A writ of *mandamus* was asked commanding the city clerk to receive and file the nomination papers and to place the petitioner's name on the primary ballot and upon the voting machines as a candidate in the Fourth district for the office of justice of the peace to be voted for at the primary election and the election. Because of the delay incident to amending the petition, the return, and the other proceedings in the matter, the court did not act upon it until after the election ·had been held. The court held that relator would have been entitled to the writ prayed for, because ch. 544, Laws of 1909, is unconstitutional and void, and awarded judgment giving the relator his costs. This is an appeal from the judgment.

For the appellant there was a brief by *Daniel W. Hoan,* city attorney, and *Clifton Williams,* special assistant city attorney, of counsel, and oral argument by *Mr. Williams.*

For the respondent the cause was submitted on the brief of ;*W. J. Kershaw.*

SIEBECKER, J. 'Art. VII, sec. 2, of the state constitution provides:

"The judicial power of this state, both as to matters of law and equity, shall be vested in a supreme court, circuit courts,. courts of probate, and in justices of the peace."

Sec. 15 of the same article provides for the election of justices of the peace in towns, villages, and cities in the manner to be prescribed by the legislature for the terms of two years, and that

"Their number and classification shall be regulated by law. 'And the tenure of two years shall in no wise interfere with

the classification in the first instance. The justices thus elected shall have such civil and criminal jurisdiction as shall be prescribed by law."

The charter of the city of Milwaukee (ch. II, sec. 3) provides that the several officers enumerated, among them justices of the peace, shall be elected by the people, and also provides (ch. II, sec. 6) that the Fourth and Sixteenth wards of the city shall comprise the fourth of the election districts into which the city is divided for the purpose of electing justices of the peace.

Ch. 544 of the Laws of 1909 was designed to provide for and regulate the number of justices of the peace in counties having a population of 150,000 inhabitants or over, to prescribe their jurisdiction, to regulate the time of holding their courts, and fixes the compensation of justices of the peace in cities of the first class, in lieu of fees, which they are required to collect and pay over to such cities. Among the provisions of this act are the following:

"The justices of the peace which may hereafter be elected in any such county shall have jurisdiction of the actions and proceedings specified in sec. 3572 of the statutes, only when the amount claimed or involved in such actions or proceedings shall not exceed the sum of one dollar." (Sec. 1.)

"Every justice of the peace hereafter elected in cities of the first class shall receive an annual salary of twenty-five dollars to be paid in monthly instalments in the same manner as the salaries of the other officers of such cities are now paid." (Sec. 2.)

"All fees paid to justices of the peace hereafter elected in cities of the first class shall belong to the city in which they are elected and shall be paid by them to the city treasury of such city." (Sec. 3.)

"Hereafter each justice of the peace elected in cities of the first class shall hold court for the trial of actions of which he has jurisdiction. Said court shall be open for the transaction of business for at least six hours during each day of the year (Sundays and holidays excepted) and shall be held by such justice, except that he shall be entitled to a vacation of

not exceeding four successive weeks in any one year, during which time he shall not be required to hold court." (Sec. 5.)

"No person hereafter elected to the office of justice of the peace in cities of the first class shall practice as an attorney in any of the courts of the county in which such cities are located." (Sec. 6.)

The trial court held the act invalid upon the ground that its provisions evinced a purpose on the part of the legislature to evade the constitutional mandate providing for the election of justices of the peace and that their number and their jurisdiction should be prescribed by the legislature. The constitutional provisions invest justices of the peace with judicial power (art. VII, sec. 2) and prescribe (art. VII, sec. 15) that the electors of the several towns, cities, and villages shall elect justices of the peace in the manner directed by the legislature, and that their number, classification, and jurisdiction shall be regulated by law. Under these provisions of the constitution it devolves on the legislature to provide the manner of their election, to regulate their number and classification, and to prescribe their jurisdiction. The question is, Has the legislature exercised its powers in conformity with this obligation? The court held that the legislative action embodied in this act (ch. 544, Laws of 1909) failed to comply with these constitutional conditions, in that the provisions of this chapter, in their effect, operated to evade them, and that the legislature, under claim of exercising its authority to regulate justices of the peace, had indirectly deprived them of their powers, so that they were practically prevented from exercising the functions of the office. There can be no question that if the legislature, under the claim of a lawful authority, so acted that it in effect deprived justices of the peace of their judicial powers, then the act opposes the obvious purposes and objects of this constitutional arrangement. It requires no elaboration to show the purposes and objects of the people in adopting the constitutional provisions declaring that the electors should elect justices of

the peace and investing them with judicial power. A reference to the facts and circumstances pertaining to the existence of this office and the usual functions exercised by the incumbents at the time of the adoption of the constitution shows what was contemplated by the framers of the constitution and the electors at the time of its adoption. Such history points out the facts that justices of the peace exercised the judicial power of the state as conservators of the peace and were vested with power to hear and determine controversies between persons pertaining to their private affairs of minor importance. The context of the foregoing constitutional provisions confirms these purposes by establishing the office, granting the incumbents judicial power to perform these functions, and imposing upon the legislature the duty to prescribe their number and jurisdiction. These positive directions to the legislature to provide for carrying into effect the powers directly vested in justices of the peace evince an intent and object that these officers were to exercise the functions attached to the office in the usual manner, and imply that any legislation on the subject which would frustrate these evident purposes is a violation of these constitutional conditions. Such legislation as destroys the powers of justices of the peace cannot be treated as valid, because it would be accomplishing an unlawful object under pretext of exercising a lawful authority. The manifest objects and purposes of these provisions were that justices of the peace should be elected and that they were to exercise the judicial power in a manner and to an extent necessary to administer justice freely and promptly within their accustomed restricted jurisdiction. To accomplish these ends the legislature was directed to regulate their number and classification and to prescribe their jurisdiction. This implies that legislative action within this field is to be so framed as to enable justices of the peace to exercise their powers to an extent commensurate with the necessities of the public and in such a manner as to pro-

tect the people's interests and to promote their convenience. The provisions of ch. 544, Laws of 1909, must be tested by these constitutional conditions. The act applies only to municipalities in counties of 150,000 inhabitants or over and cities of the first class. We need not specifically consider the necessities and interests of the people of such communities as to the number, classification, and jurisdiction of justices of the peace within their respective municipalities, for the objections raised to this legislation are equally applicable to all justices of the peace throughout the state. The provisions assailed as invalidating the law are the provisions (1) that the jurisdiction of justices of the peace in such cities shall only be exercised in actions and proceedings wherein the amount in controversy shall not exceed one dollar, such limitation not applying to such justices in cities of the third and fourth classes; (2) that all justices of the peace in cities of the first class are to receive a salary, to be paid by the city, of $25 annually in lieu of fees, which, except the fees paid for making a return upon appeal, are to be collected by them and turned over to the city; (3) that the justices of the peace elected in such cities shall hold court each day, excepting for four weeks in the year and Sundays and legal holidays, that the court shall be kept open for a period of six hours each day, and that such justices shall not practice as attorneys in the courts of such county.

The enforcement of these provisions would manifestly so operate as to effect a practical abrogation of the powers, of such justices. It is obvious that no person can reasonably be expected to perform all the duties of the office, maintain a court, and keep it open for the conduct of business six hours daily for eleven months in a year at a salary of $25 per annum, in lieu of the statutory fees which are to be turned over to the city. It is self-evident that these regulations are arbitrary and unreasonable and evince a purpose to make the performance of the functions of the office so burdensome as to

deter persons from assuming its duties and to cast odium upon it. Such treatment of the office is in violation of the plainest implications of the constitutional provisions pertaining to it. While the jurisdictional limitation of the amount in controversy to one dollar in actions and proceedings specified in sec. 3572, Stats. (1898), is not as clearly indicative, of the purpose to so regulate the jurisdiction as to practically deprive justices of the peace of the exercise of judicial power in such cities, it obviously operates to aid in accomplishing such a purpose. A jurisdiction limited in amount to controversies involving only one dollar is well nigh the border line of non-jurisdiction, and a court so limited as to the amount upon which to exercise its functions will more likely be treated with ridicule and contempt than with the respect customarily accorded to judicial tribunals. Viewing these regulations in the light of their actual operation, it is clearly manifest that they accomplish indirectly what, concededly, cannot be done directly, namely, they practically operate to deprive justices of the peace of the exercise of the judicial power vested in them and thus evade the provisions of the constitution establishing the office and directing that the legislature regulate their number and their jurisdiction so as to enable them to perform this public function conformably to the purposes manifested by the people of the state and embodied in this constitutional arrangement.

We are of the opinion that the circuit court correctly held that this legislative action was an unlawful exercise of this legislative function in prescribing the foregoing conditions and jurisdiction for the exercise of the judicial power of justices of the peace.

It is contended that those portions of the act which are involved are distinct from the other portions and that therefore they are separable therefrom and can be held to be independent. The various parts of this act are not severable into separate and complete regulations of any branch of the subject

it embraces and hence cannot be upheld in part and rejected in part. Furthermore, it is obvious from the context of the act that the void parts of the act embrace the dominant purposes of the legislation and were the inducements to the enactment of the other portions. Under these circumstances the whole of the act must fall with the invalid portions. Since the act must be declared invalid, no other questions presented by counsel need be considered.

Though the primary and the general election have taken place, the questions presented are properly here on appeal within the rule applied in *State ex rel. Runge v. Anderson,* 100 Wis. 523, 76 N. W. 482, and *State ex rel. Treat v. Hammel,* 134 Wis. 61, 114 N. W. 97.

*By the Court.*—Judgment affirmed.