CITY OF MONROE, Appellant, vs. ENDELMAN, Respondent.

*September 18—October 29, 1912.*

*Peddlers: Transient merchants: License fees payable to city: Amount:*
*Reasonableness: Power delegated to municipality: Discretion:*
*Confiscatory ordinance.*

1. The purpose of ch. 490, Laws of 1905 (secs. 1570–1584j, Stats.:
   Supp. 1906), was to regulate and tax, not to prohibit or destroy,
   the occupations (of peddlers, transient merchants, etc.) to
   which the act relates; and hence the delegation of power to
   municipalities to exact *per diem* fees (in addition to the license
   fee paid to the state) did not include the power to prohibit or
   destroy such occupations.

2. The provision in sec. 5 of said act (sec. 1574, Stats.: Supp. 1906)
   that a transient merchant "shall . . . also pay to the treasurer
   of any city or village where he may be conducting his business
   a sum not to exceed $25 per day, . . . such amount to be de-
   termined by ordinance or resolution of such city or village," is
   a limitation upon the maximum amount that may be demanded,
   and not a delegation of authority to every city and village to
   impose the maximum amount.

3. Such act delegates authority only to exact *reasonable per diem*
   fees, not exceeding the maximum stated, and in fixing such fees
   the size of the city or village in which the business is to be
   conducted, and perhaps the nature and extent of the business
   of the transient merchant, must be taken into consideration.

4. The discretion vested in the municipal authorities, as to fixing
   the *per diem* fee, is controlling so long as it is exercised within
   the delegated limits and purposes; but it may be restrained
   within those legitimate boundaries by the courts.

5. Where a transient merchant, having paid a license fee of $75 to
   the state, was offering at retail in a city of 4,500 inhabitants a
   stock of clothing worth not to exceed $3,000, and his sales
   averaged only $88, his gross profits about $18, and his expenses
   about $7 per day, an ordinance requiring him to pay to the city
   a *per diem* fee of $25 was confiscatory and void.

APPEAL from a judgment of the circuit court for Green
county: GEORGE GRIMM, Circuit-Judge. *Affirmed.*

The city of *Monroe* is the county seat of Green county,
with a population of about 4,500, and is a city of the fourth

class, operating under the general charter law of the state. Three policemen are employed by it to whom it pays salaries of $75, $65, and $60 per month, respectively. For several years the rate of taxation in the city has been approximately two per cent. on the assessed valuation of all property, real and personal. On the 18th day of October, 1910, the city, pursuant to ch. 490, Laws of 1905 (secs. 1570–1584*j*, Stats.: Supp. 1906), passed an ordinance requiring all transient merchants desiring to do business therein to obtain a license and to pay therefor at the rate of $25 per day. The defendant, *Endelman,* is a nonresident of the state of Wisconsin, his home being in Columbus, Ohio. For the past ten or eleven years he has been a transient merchant. He came to the city of *Monroe* on the 23d day of July, 1911, bringing with him a stock of clothing of the value of $2,500 to $3,000. He rented a store building, for which he agreed to pay $30 per month; had two clerks to whom he paid $5 per day, and had a transient merchant's license issued to him by the state, for which he had paid $75. On the 27th day of July, 1911, the defendant offered for sale, and sold, merchandise in the city without first having obtained a local license, as required by the ordinance hereinbefore referred to. The defendant sold goods in the city of *Monroe* during the days of July 27, 28, 29, and 31, 1911. He took out a local license for each of the dates of July 28, 29, and 31 and paid under protest for each license $25. During the four days the defendant sold goods in the city his gross sales amounted to $352 or an average of $88 per day. His profits were twenty per cent. of his gross sales. His daily expense was about $7. It was then a dull time or season of the year for that class of business. The cost of issuing a license to the defendant by the city did not exceed $1. The character of the defendant's business was such that it did not require any special police protection or inspection and it was conducted and carried on by the defendant in an orderly and law-abiding manner.

The above are substantially all the facts stipulated to be the facts upon the trial of the case.    The defendant was arrested for conducting the business of a transient merchant on the 27th day of July without first having paid the license or *per diem* fee of $25 as required by the city ordinance.    He was brought before the police justice of the city, who found him guilty of violating the ordinance and imposed a fine of $50 and the costs of the action.    The defendant then appealed to the circuit court for Green county, before which the case was tried upon the facts hereinbefore set forth.    The circuit court sustained the constitutionality of ch. 490 of the Laws of 1905, but held the ordinance void on the ground that it was unreasonable and in effect prohibitory, and entered judgment in favor of the defendant, from which the plaintiff appealed.

.W. H. M'Grath, for the appellant.

J. L. Sherron, for the respondent.


Vinje, J.    Ch. 490, Laws of 1905 (secs. 1570–1584j, Stats.: Supp. 1906), is entitled "An act relating to hawkers and peddlers and various other occupations."    Among the occupations therein mentioned is that of transient merchants, circuses, and exhibitions, traveling vaudeville, ferris wheel, merry-go-round, ocean wave, transient shooting gallery, the exhibition of trained or wild animals or other objects of curiosity, and that of fire-sale merchants.    The constitutionality of the law, so far as its general scheme is concerned, was sustained in the case of *Servonitz v. State,* 133 Wis. 231, 113 N. W. 277. Judging merely from the title of the act, it would seem to be an exercise of the police power alone, but in view of the amount of license fee required to be paid the state and of the *per diem* fees which may be imposed by municipalities, it seems that its purpose was a dual one, namely, to regulate the trades and occupations mentioned under the exercise of the police power and to impose a reasonable tax upon such occupations and trades.    It is evident, however, that the purpose

of the legislature was to regulate and tax, not to prohibit or destroy, the occupations to which the law related. Hence the delegation of power to the municipalities of the state to exact *per diem* fees did not include the power to prohibit or destroy the callings or occupations which they were empowered to regulate and tax.

Sec. 5 of the act (sec. 1574, Stats.: Supp. 1906) provides, among other things, that each transient merchant "shall . . . also pay to the treasurer, of any city or village where he may be conducting his business, a sum not to exceed twenty-five dollars per day for each day that he may be engaged in carrying on his business, such amount to be determined by ordinance or resolution of such city or village." This language must be held to be a limitation upon the maximum amount that can be demanded to be paid in any city under any circumstances, and not to be a delegation of authority to every city and village to impose the maximum amount, as is claimed by the plaintiff. The legislature was well aware of the fact that the cities and villages within the state varied greatly as to population, and that the value of carrying on the business of a transient merchant in any village or city depended quite largely on the number of inhabitants of such village or city. It is unreasonable, therefore, to suppose that the legislature intended that the smallest village in the state could lawfully fix and demand a tax equal in amount to that which the largest city in the state could impose. Such a construction of the law would enable most cities and villages to entirely suppress and prohibit the lawful callings that were intended by the legislature to be merely regulated and taxed. The naming of a maximum *per diem* fee did not absolve villages and cities from the duty of fixing reasonable *per diem* fees, taking into consideration the size of the village or city in which the business was to be conducted, and perhaps the nature and extent of the business of the transient merchant. Hence, the act must be construed to delegate to cities and vil-

Monroe v. Endelman, 150 Wis. 621.

lages the authority to exact *reasonable per diem* fees, which fees must in no case exceed the sum of $25 per day. Such a construction of the language quoted above harmonizes it with the evident intent and purpose of the act and places the law safely within the constitutional limits of legislative power.

' The delegation of legislative power to subordinate political divisions of the state is solely for public purposes, and, when the scope and purpose of such delegated power is manifest, it must be exercised within the limits and for the purposes disclosed in the act delegating it. *Le Feber v. West Allis,* 119 Wis. 608, 97 N. W. 203.

This brings us to a consideration of the reasonableness of the ordinance. Unquestionably the discretion vested in the municipal authorities of fixing the *per diem* fee must be controlling as long as it is exercised within the delegated limits and purposes. But courts may inquire into the extent of those limits and purposes, and, if it be found that they have been manifestly exceeded by a municipal act, declare such act invalid on the ground that it is in excess of the authority granted. This leaves municipal discretion supreme within the field and for the purposes granted. Judicial control only restrains it within its legitimate boundaries. It does not supplant, limit, or modify it within such boundaries. That courts have uniformly exercised such power in this and other states may be seen by reference to the case of *Le Feber v. West Allis,* 119 Wis. 608, and cases cited on page 613 (97 N. W. 203).

The ordinance in question must be held to be void on the ground that it is confiscatory. It requires no argument to demonstrate that it is so. A mere statement of the material facts is sufficient. The defendant carried a stock of merchandise of a value not exceeding $3,000. He was offering this for sale at retail in a city containing 4,500 inhabitants. His daily sales averaged only $88. His gross profits were twenty per cent. of his sales, and his daily expenses about $7.

The $25 *per diem* fee would alone more than consume his gross profits.    Tested in another way, it appears that if he continued in business in *Monroe* for a year he would pay in fees over $7,500 on a stock of merchandise the average value of which did not exceed $3,000.    Obviously such a tax would confiscate defendant's whole property long before the year expired.    Similar ordinances have invariably been held to be confiscatory and therefore void.    *Carrollton v. Bazzette,* 159 Ill. 284, 42 N. E. 837 ; *Ottumwa v. Zekind,* 95 Iowa, 622, 64 N. W. 646 ; *Chaddock v. Day,* 75 Mich. 527, 42 N. W. 977 ; *Brooks v. Mangan,* 86 Mich. 576, 49 N. W. 633 ; *Peoria v. Gugenheim,* 61 Ill. App. 374 ; *Sipe v. Murphy,* 49 Ohio St. 536 ; *Ex parte Eaglesfield,* 180 Fed. 558.

It is true that cases may be found in which it has been held that a calling or business may be entirely prohibited by the imposition of such a tax or regulatory fee as is sufficient to prevent the business from being carried on with profit, but such cases relate to businesses or callings that are more or less injurious to society and which, therefore, may be entirely suppressed by means of license fees or regulations.    The business of the defendant was a lawful one, not injurious but beneficial to society, and does not fall under the class just mentioned where prohibitory ordinances have been upheld.

*By the Court.*—Judgment affirmed.