WAGNER, Appellant, vs. CITY OF MILWAUKEE and others, Respondents.

*April 15—June 6, 1922.*

*Municipal corporations: Power of council to prescribe wages to be paid employees: Ordinance prescribing union scale: Validity: Surrender of legislative function.*

1. A common council may, within a reasonable and fair compass, fix the minimum rate of wages to be paid to laborers employed by the city or by contractors on city work. Such power is subject to the implied duty to keep within the bounds of what is reasonable, fair, and proper.

2. A city ordinance requiring skilled laborers employed on work done for the city or for any city contractor to be paid the prevailing wage, to be determined by that paid to members of any labor organization for such labor, and providing such prevailing wage should first be approved by the members of the common council, and a resolution fixing a scale of wages pursuant thereto, were void as a surrender by the members of the common council of the exercise of their independent and individual judgments and an agreement to be bound by the scale determined by the labor unions.

3. The invalid provision of the ordinance permitting fixing of the wage scale by labor unions permeated the entire ordinance, notwithstanding a provision that its different sections were separable.

OWEN, DOERFLER, and CROWNHART, JJ., dissent.

APPEAL from a judgment of the circuit court for Milwaukee county: JOHN J. GREGORY, Circuit Judge. *Reversed.*

Plaintiff, as resident taxpayer, for himself and others sued to restrain the enforcement of an ordinance and a resolution in compliance therewith of the city of *Milwaukee* purporting to fix a minimum wage scale in said city.

The complaint in substance shows the official capacity of the individual defendants in connection with the defendant city of *Milwaukee*. It recites the adoption September 6, 1921, by the common council of the defendant city, of an ordinance the material parts of which are as follows:

"Sections 562.1, 562.2, and 562.3 of the Milwaukee Code of 1914 are amended to read:

"Section 562.1. Hereafter all laborers employed in any work done by the city or for the city of *Milwaukee* by any contractor or subcontractor performing work for the city, either new construction work or repair work, or work on any roads, bridges, sewers, streets, alleys, buildings or any public work, shall receive and be paid a sum of not less than that paid by the city for such laborers by direct employment for a day's work of eight hours.

"Section 562.2. Hereafter all skilled laborers employed on any work done by or for the city or for any contractor or subcontractor performing work for the city on any building or improvement, or work on roads, bridges, sewers, streets, alleys, buildings or other public work shall be paid a sum which shall not be less than the prevailing wage in this city for such skilled labor; *said prevailing wage to be determined by the wage paid to members of any regular and recognized organization of such skilled laborers* for such skilled labor, which prevailing wage shall be the minimum price paid to all skilled laborers hereafter employed to do the work herein specified, *provided that such prevailing wage shall first be determined and approved by a majority vote of the members of the common council,* and provided that in no case shall such scale of wages be less than that paid by the city for such skilled labor by direct employment for a day's work of eight hours, and for this purpose all ordinances pertaining to labor are hereby made a part of all specifications, contracts, subcontracts and agreements hereafter made, let and submitted by the city of *Milwaukee.*

"Section 562.3. The purpose of sections 562, 562.1, and

562.2 is to insure a better class of workmanship on all city work. With reference to a minimum wage and to the payment of the prevailing rate of wage to skilled laborers, sections 562, 562.1, and 562.2 shall apply to such contract work as is hereafter let, and neither sections 562, 562.1, nor 562.2 is passed as an inducement for the enactment of either of the others. . . .''

That pursuant thereto a certain resolution was passed as follows:

"Resolved by the common council of the city of *Milwaukee,* that pursuant to the provisions of an ordinance passed by the common council on the 6th day of September, 1921, relating to the standards and requisites of labor employed in all public work, the scale of wages of all skilled labor employed in all public work shall be as follows:

| | |
|---|---|
| Electrical mechanics | $1.00 per hour |
| Asbestos workers | .85 per hour |
| Bricklayers and masons | 1.00 per hour |
| Building laborers | .65 per hour |
| Carpenters and millwrights | .85 per hour |
| Pile drivers | .75 per hour |
| Cement finishers | 1.00 per hour |
| Elevator constructors | 1.00 per hour |
| Iron workers | 1.00 per hour |

Then follows a list of about thirty-eight specified employments with prices fixed and varying from sixty-five cents to $1.25 per hour, respectively.

It is further alleged that the ordinance is void and unconstitutional as being a delegation of the legislative function of the common council to labor unions or organizations, and because in violation of the charter of the said city of *Milwaukee* providing that all public contracts are to be let to the lowest bidder; that the city threatens to enforce said ordinance; and that contracts to which such ordinance would apply and to be let by the city of *Milwaukee* during the course of the following year would require at least $2,000,000 to be paid in wages; that the prevailing wage scale, as set forth in said resolution, is and will continue to be at least twenty-five per cent. in excess of the actual real prevailing

wages in the city of *Milwaukee* and vicinity in the trades mentioned and for which work could be done and contracts let; that the enforcement of such ordinance will be contrary to the general welfare of the city, will result in a monopoly of organized labor in all work done by or for the city, will discriminate against a large number of taxpayers in the said city having equal rights with the members of labor organizations in the premises, and that it is class legislation and violative of the constitution of Wisconsin and of the United States, and particularly sec. 1, art. XIV, of the Amendments; that plaintiff is without adequate remedy at law.

The judgment prayed was that such ordinance be declared null and void and the defendants and all of them enjoined and restrained from enforcing or attempting to enforce the same. Defendants' demurrer was sustained, and upon plaintiff's refusal to amend his complaint judgment of dismissal was entered, from which plaintiff appealed.

For the appellant there was a brief by *Lamfrom & Tighe*, attorneys, and *Leon B. Lamfrom*, of counsel, all of Milwaukee, and oral argument by *Leon B. Lamfrom*.

For the respondents there was a brief by *John M. Niven*, city attorney, and *Chas. W. Babcock*, assistant city attorney, and oral argument by *Mr. Babcock*.

A brief was also filed by *Quarles, Spence & Quarles*, with *J. V. Quarles*, of counsel, all of Milwaukee, as *amici curiæ*, and oral argument by *J. V. Quarles*.

There was also a brief by *Bottum, Hudnall, Lecher & McNamara* of Milwaukee as *amici curiæ*, and oral argument by *Geo. B. Hudnall*.

ESCHWEILER, J. Two questions are here presented:

*First.* May a common council fix and determine what shall be a minimum prevailing wage scale to be paid by the city to its own employees and also require its contractors to pay their employees such rate?

*Second.* If there be such a power, is there here an un-

warranted delegation to some outside body of the authority to determine such wage scale?

In view of the fact that both questions are here fully argued, are of importance, and require present determination, we shall, although disposing of the present case upon an affirmative answer to the second, nevertheless give our present views as to the first of the above questions.

For the common council to fix a prevailing minimum wage scale is but a step in advance but nevertheless in line with what was held to be a proper exercise of its legislative discretion and function in the case of *Milwaukee v. Raulf,* 164 Wis. 172, 159 N. W. 819, and we think what was said and held in that case controls on the question now discussed. It was there held (p. 177) that, inasmuch as by the charter the common council has the management and control of all the property of the city except as therein limited, it was empowered, in such proprietary capacity and with such broad control, to lawfully prescribe the number of hours per day laborers on city work should be permitted to devote to such labor. Such a legislative control over the hours of labor and conditions of employment of women and minors was upheld in *State v. Lange C. Co.* 164 Wis. 228, 157 N. W. 777, 160 N. W. 57. As to city employees such a provision as to hours of labor has long been recognized. *Vogt v. Milwaukee,* 99 Wis. 258, 74 N. W. 789.

In fixing the hours of labor the legislative body for the city of *Milwaukee* was but following the public policy theretofore declared by the legislature by the statutes fixing the hours of labor on work done for the state and discussed in the *Raulf Case, supra,* on page 180. So that it manifestly could not have been logically held that for the city of *Milwaukee* to do that which the legislature had already done in the same line was contrary to the public policy of the state. That such action is a seeming advance over what has been heretofore done as to wage regulating by the state instead of a following of state policy as in the *Raulf Case, supra,*

does not inhibit it. The legislature has already declared itself on the subject of determining and compelling recognition of a reasonable wage scale for women and minors by secs. 1729s—1 to 1729s—12, inclusive (ch. 712, Laws 1913), not as yet before this court. Similar statutes have been upheld in such cases as *Williams v. Evans,* 139 Minn. 32, 165 N. W. 495; *Larsen v. Rice,* 100 Wash. 642, 171 Pac. 1037; *State v. Crowe,* 130 Ark. 272, 197 S. W. 4; *Stettler v. O'Hara,* 69 Oreg. 519, 139 Pac. 743; *Simpson v. O'Hara,* 70 Oreg. 261, 141 Pac. 158, these two affirmed by equal division of the court in 243 U. S. 629, 37 Sup. Ct. 475. A full discussion is found in a case passing upon an act creating a commission to investigate the subject of the minimum wage scale for minors and females in *Holcombe v. Creamer,* 231 Mass. 99, 120 N. E. 354.

As a general proposition, therefore, such a legislative body as the common council of *Milwaukee* under its charter power may fix, within a reasonable and fair compass, the rate of wages to be paid to laborers on city work, as much so as it may prescribe the hours of labor as held in the *Raulf Case, supra,* and as well as it may prescribe the quality of materials that shall go into its public buildings and works, as has been its unquestioned power and practice. A similar result was reached, though based upon the police power rather than upon proprietary right, in *Malette v. Spokane,* 77 Wash. 205, 137 Pac. 496. After a recent amendment to the New York constitution the legislative right to fix the hours of, and compensation for, labor done for the state or any municipality was recognized in that state. *People ex rel. Williams E. & C. Co. v. Metz,* 193 N. Y. 148, 158, 85 N. E. 1070; *People v. Crane,* 214 N. Y. 154, 171, 172, 108 N. E. 427, affirmed 239 U. S. 195, 36 Sup. Ct. 85. See, also, *Heim v. McCall,* 239 U. S. 175, 192, 36 Sup. Ct. 78.

With such a grant of power there is always the implied duty to keep within the bounds of what is reasonable, fair,

and proper, and particularly always mindful that the common council is but a body representing, and with the primary purpose of subserving the best interests of, the community at large. That such power must be exercised within such implied as well as within any expressed boundaries is the unquestioned rule in this state. *Monroe v. Endelman,* 150 Wis. 621, 625, 138 N. W. 70; *Eastern Wis. R. & L. Co. v. Hackett,* 135 Wis. 464, 481, 115 N. W. 376, 1136, 1139; *Le Feber v. West Allis,* 119 Wis. 608, 613, 97 N. W. 203. See, also, *O'Neil v. Providence A. Co.* 42 R. I. 479, 108 Atl. 887; *Taylor v. Philadelphia,* 261 Pa. St. 458, 104 Atl. 766.

The question presented under the allegations of the complaint, whether to enforce the wage scale as fixed by the common council, which it is claimed would add twenty-five per cent: per annum to the labor cost of all work done for the city of *Milwaukee* for the current year, such contracts exceeding $2,000,000 in amount, would make such a fixed standard of wages an unreasonable exercise of the ordinance-making power of the common council, is not necessary now to determine, and we therefore express no opinion upon that point.

Upon the second of these questions we see no escape from the conclusion that by the terms of the ordinance in question and the resolution passed in accordance therewith there is manifest a declaration by the common council that in fixing a minimum wage scale it will and does adopt and establish as such scale and prevailing wage the rate paid to the members of any regular and recognized organization of the skilled laborers for each particular class of labor. The only exception recognized as to such being the standard is in the case where, to any particular class of labor, the city itself is then paying a higher scale of wages.

This in effect declares that some body or organization outside of and independent of the common council, and other than a state or local administrative body, shall exercise

the judgment required to fix and determine a prevailing wage scale.    It amounts to nothing less than a surrender by the members of the common council of the exercise of their independent, individual judgments in the determination of a matter of legislative concern, and an agreement that if they act upon the subject at all the determination of such outside body rather than their own shall control.    There is no discretion left with the common council as to the scale; if it fixes any, it must fix that scale determined by the unions. The action and judgment of determining the wage scale is that of the unions, not that of the common council.    The power to exercise such legislative function is exclusively in the common council, and their duty and obligation as representatives of the people to so exercise it is co-extensive with the power itself.

We shall use neither time nor space over the proposition that the euphuism, "any regular and recognized organization of such skilled laborers," found in the ordinance, means "labor unions," and shall use the latter expression instead of the former herein.

If one common council can lawfully bind itself and its successors to accept the judgment and discretion of an outside body in one particular instance representing organized labor, another common council may claim an equal right to bind itself and its successors to accept a scale for a maximum wage to be fixed by some other outside body which may be as much interested in keeping the returns to labor down as labor organizations are to keep them up.    If the power to do the former is recognized as legal and constitutional the right to do the latter cannot be denied.    The language, the reason, and the logic of repeated former rulings of this court and of other courts plainly declare that any attempted vesting of the determination of such a legislative question in an outside body is an abdication, and not an exercise, of the legislative discretion that exclusively belongs to the common council itself.

The following among the many other cases that might be cited make the conclusion at which we arrive imperative: *State ex rel. Nehrbass v. Harper,* 162 Wis. 589, 156 N. W. 941; *State ex rel. Carey v. Ballard,* 158 Wis. 251, 257, 148 N. W. 1090; *Meade v. Dane Co.* 155 Wis. 632, 644, 145 N. W. 239; *Forest Co. v. Shaw,* 150 Wis. 294, 302, 136 N. W. 642; *Little Chute v. Van Camp,* 136 Wis. 526, 117 N. W. 1012; *Eubank v. Richmond,* 226 U. S. 137, 143, 33 Sup. Ct. 76; *State v. Crawford,* 104 Kan. 141, 177 Pac. 360, 2 A. L. R. 880.

The distinction between the attempted delegation here to labor unions of the power to determine and fix the prevailing wage scale for the city of *Milwaukee* and the lawful vesting in some administrative body, a part of the government itself, appointed by or under the control of the legislative body to determine when certain facts or conditions are within the law, such, for example, as the various commissions now performing such important functions in our present-day administration of public affairs, is too manifest and plain to need further mention. Such administrative bodies are a part of the government, act for it and under such situations that they can approach and determine questions impartially, unbiased, and without adverse personal interest.

The ordinance provides that neither of the various sections thereof is passed as an inducement for the enactment of either of the others. It is argued that upon this express declaration and under the general rules of law the particular portion of the ordinance which we are now compelled to hold as beyond the constitutional power of the common council to enact can be separated from the rest and the balance upheld. We cannot, however, so regard it. The controlling, dominant feature of this entire ordinance is the fixing, in concrete, definite form and in express terms of dollars and cents, the prevailing wage scale for the various crafts and industries. This essential and dominant feature is, by the ordinance, fixed by the labor unions rather than

Wagner v. Milwaukee, 177 Wis. 410.

by the common council.    Such rule of action is one we are
constrained to hold beyond the power of the common coun-
cil to make. · It permeates the entire measure, and when it
falls the rest must fall.    *State ex rel. Husting v. Board of
State Canv.* 159 Wis. 216, 226, 150 N. W. 542; *Water
Power Cases,* 148 Wis. 124, 151, 152, 134 N. W. ·330;
*State ex rel. Burke v. Hinkel,* 144 Wis. 444, 450, 129 N. W.
393; *Huber v. Martin,* 127 Wis. 412, 445, 105 N. W. 1031,
1135, 3 L. R. A. n. s. 653.

We are not able to agree with the view suggested, that
the provision in the ordinance that a majority vote of the
members of the common council shall first determine and
approve such prevailing wage before it becomes operative
makes such action by the common council the ultimate deter-
mination whether it be in accord with that fixed and estab-
lished by the labor unions or not, nor with the further
suggestion that the wage scale fixed by the recognized labor
organizations is but a standard to which the common council
may refer if it so elect.    We must assume, and do assume,
that the declarations in the ordinances in question are made
in good faith, that they mean what they say, and that it
was intended that they shall be lived up to in good faith,
and not as saying one thing and meaning another.

We have considered and disposed of the questions pre-
sented upon the view that the ordinances mean what the
great mass of mankind would consider them to mean and
as representing to the labor unions in particular, and to the
community at large, that when the common council under-
takes to fix any prevailing wage scale they will fix that
already established by such labor unions.

It follows that the complaint set forth a good cause of
action upon the grounds above stated and that the demurrer
thereto should have been overruled.

*By the Court.*—Judgment reversed.

JONES, J. (*dissenting in part*).    I agree that the de-
murrer should be overruled on the second ground stated in

the opinion. It is unnecessary to decide in this case the question whether a common council can determine what shall be a minimum prevailing wage scale to be paid by the city to its own employees and also require its contractors to pay their employees such a rate. In my judgment it would have been preferable not to decide so important a question until a decision should become necessary. This was the course adopted in New York and Massachusetts. *People ex rel. Williams E. & C. Co. v. Metz*, 193 N. Y. 148, 156, 85 N. E. 1070; *Holcombe v. Creamer*, 231 Mass. 99, 120 N. E. 354.

OWEN, J. (*dissenting*). I cannot agree that the ordinance under consideration contains any delegation of legislative power. The legislative declaration is that skilled laborers employed on any work done by or for the city or for any contractor or subcontractor performing work for the city shall be paid a sum which shall not be less than the prevailing wage in the city for such skilled labor. That is the legislative declaration, and as legislation it is full and complete. Manifestly the determination of what is the prevailing wage at any given time involves the ascertainment of a fact. The common council cannot by its fiat establish the prevailing wage. That is established by various industrial and economic forces. The ascertainment of a fact is not a legislative function. In *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* 136 Wis. 146, 163, 116 N. W. 905, it is declared: "The legislature may delegate any power not legislative which it may itself rightfully exercise. *Wayman v. Southard*, 10 Wheat. 1. This power to ascertain facts is such a power as may be delegated."

If there is any delegation of power in this ordinance it is the power to ascertain facts, to wit, the prevailing wage. This is not legislative and it may be delegated. It is not uncommon for statutes to declare the legislative will in gen-

eral terms under circumstances making the ascertainment of facts necessary in order to determine where and when the law is operative. In such cases it is held competent for the legislature to prescribe how, when, and by whom such facts shall be determined. To illustrate, it is common for the legislature to prescribe qualifications on the part of individuals to pursue given occupations or professions. The question whether or not a given individual possesses such qualifications is left to an administrative body. The legislature may also prescribe what evidence shall be held conclusive of the existence of the prescribed qualifications. Thus, it was held in *Price v. State,* 168 Wis. 603, 171 N. W. 77, that the legislature may make a certificate of another state proof of the fact that one desiring to practice optometry in this state possesses the qualifications requisite under the law of this state.

The influence of labor unions upon the prevailing wage of a given community is well understood. There is no other one factor that contributes as much to establish the prevailing wage in a large city as the labor unions. Since it was necessary for the ordinance to prescribe the manner in which the prevailing wage was to be determined, it was competent and appropriate to provide that the wage scale promulgated by the labor union should be considered conclusive of the prevailing wage for the purposes of the ordinance. This did not constitute a fixing by the labor unions of the wage to be paid by the city. They promulgate their wage scales irrespective of, and without any thought of or reference to, the ordinance. When promulgated they have a powerful if not dominating influence in the matter of fixing the prevailing wage in the city. When the ordinance provides that this wage scale shall be taken as conclusive evidence of the prevailing wage in the city, it is the ordinance, the legislative act of the common council, and not the labor union, that makes the union scale of wages the scale to be paid to laborers upon city work.

It necessarily follows from these considerations that, in my opinion, the common council might as well have done directly what it appears to have attempted to do indirectly, namely, provide that the union scale of wages should be paid to laborers performing city work.   If it is valid legislation (and it is so held by the court) to provide for a minimum wage to be paid to laborers on city work, no reason is perceived why it is not competent to provide that the union scale of wages shall be paid.   So I think the common council indulged in a needless and confusing circuity in accomplishing what appears to have been its evident purpose.

The opinion contains this statement:

"The distinction between the attempted delegation here to labor unions of the power to determine and fix the prevailing wage scale for the city of *Milwaukee* and the lawful vesting in some administrative body, a part of the government itself, appointed by or under the control of the legislative body to determine when certain facts or conditions are within the law, such, for example, as the various commissions now performing such important functions in our present-day administration of public affairs, is too manifest and plain to need further mention."

I must confess that this declaration mercilessly convicts me of most deplorable obtuseness.   If the ascertainment of a fact be a legislative function it cannot be delegated at all. If it is not a legislative function I know of no rule of law, and none is referred to, holding that it must be delegated to a constituted governmental authority.   But my position is that nothing here is delegated.   The common council merely adopts the wage scales promulgated by labor unions as conclusive evidence of the prevailing wage.   If it has a right to declare that the prevailing wage shall be paid to laborers engaged in city work, it manifestly has the right to provide how that prevailing wage shall be determined. In this instance it has in effect prescribed that the wage scale of the labor unions shall be conclusive evidence of

that fact. I can see nothing in the nature of a delegation of legislative power in this provision. I do not think the ordinance should be condemned for this reason, and in my judgment the order appealed from should be affirmed.

I am authorized to state that Mr. Justice DOERFLER and Mr. Justice CROWNHART concur in the foregoing dissenting opinion.