EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY and another, Appellants, vs. INDUSTRIAL COMMISSION and others, Respondents.

*September 16—October 11, 1938.*

For the appellants there were briefs by *Quarles, Spence & Quarles,* attorneys, and *Kenneth Grubb* and *Arthur Larson* of counsel, all of Milwaukee, and oral argument by *Mr. Grubb.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent town of Manchester there was a brief by *E. S. Jedney* and *Ralph S. Lund,* both of Black River Falls, and oral argument by *Mr. Jedney.*

WICKHEM, J.   The facts in this case are not in dispute. The question upon this appeal is whether, upon the facts before the commission, a contract existed between the plaintiff town of Brockway and the defendant partnership of Johnson & West in such a manner as to bring into operation sec. 102.06, Stats., which provides:

"An employer shall be liable for compensation to an employee of a contractor or subcontractor under him who is not subject to this chapter, or who has not complied with the conditions of subsection (2) of section 102.28 in any case where such employer would have been liable for compensation if such employee had been working directly for him. . . ."

The examiner and the commission found that there was such a contract, and this was the conclusion of the trial court. Plaintiffs contend that the commission and the trial court were in error in so ruling.   It will be necessary to examine the facts briefly preliminary to determination of the issue.

Douglas Bright, husband of defendant Luella Bright, was killed on August 7, 1936, by a fall of shale while working in a gravel pit. At that time he was employed by a firm of truckers, defendants Johnson & West, who were not insured against losses under the Workmen's Compensation Act. Sometime prior to July 29, 1936, the chairman of defendant town of Manchester had made a contract with Johnson & West whereby the latter agreed to get some shale out of a specified gravel pit and haul it to some roads in the town of Manchester which needed repair. Deceased was hired to do the common labor of digging in the shale pit, and entered upon his employment. While work upon this contract was still in progress, the chairman of the town of Manchester suggested to the chairman of the town of Brockway that some shale be placed upon the town-line road between the two towns. This road had been maintained jointly for years, each town paying half of the expenses of upkeep. The chairman of the town of Brockway told the Manchester chairman that he should make the arrangements, and after some conversations between the two chairmen, the chairman of the town of Brockway agreed that a price of eighty cents a yard was satisfactory. The chairman of the town of Brockway did not know with whom the town of Manchester was contracting or where the shale would come from. The chairman of the town of Manchester ordered Johnson & West to go ahead with the hauling and supervised the execution of the contract, and the town of Manchester made all the payments to the partners and to the employees, including the deceased. The chairman of the town of Manchester specified that the employees must come from Manchester, and further specified a Manchester gas station as the place where gas should be purchased. He also designated the pit in Manchester from which the shale was to be hauled. It was during the execution of this contract that Bright was killed by a cave-in at the shale pit. Defendants contend that

the towns of Brockway and Manchester jointly contracted with the partnership of Johnson & West; that the latter partnership, having failed to comply with the conditions of sub. (2) of sec. 102.28, Stats., the towns shared jointly a compensation liability to employees of Johnson & West, for the reason that they would have been liable for compensation if Bright had been working directly for them. The sole question is whether the town of Brockway was a party to the contract between the town of Manchester and the partnership of Johnson & West. Whether the town of Brockway had a contract with the town of Manchester to reimburse it for one half of the cost of putting the shale upon the town-line road is, of course, wholly immaterial.

There are only two theories upon which a contract could be argued to exist between the town of Brockway and the partnership of Johnson & West. The first is that accepted by the trial court, namely, that there was a direct contract between the town of Brockway and the partners, not through the agency of the chairman of the town of Manchester but by using the telephone and the chairman of the town of Manchester merely as means of communication to transmit acceptance of the contract. This view of the situation reduces the position of the chairman of the town of Manchester to that of a mere messenger for the town of Brockway. We are unable to accept this view. It is evident that the chairman of the town of Brockway delegated to the town of Manchester the power to enter into this contract and to negotiate and settle its details. Except for the price to be paid and the location of the repairs, the town of Brockway had no part in the contract whatever, and did not even know who the other parties to the contract were or what they were to agree to. All these matters were left to the discretion of the chairman of the town of Manchester, and he cannot, under the facts, be relegated to the position of a messenger.

The other theory is that a joint contract was made between the two towns and the partnership by the process of delegating authority or agency, in other words, that the town of Brockway designated the chairman of the town of Manchester to make a contract on its behalf with the partners. The difficulties with this theory are two. In the first place, the town board of the town of Brockway had no authority to delegate its powers to an agent such as the town of Manchester or its chairman, and if such authority did exist, it certainly could not be exercised by the chairman of the town but must have been exercised by the town board. Sec. 81.01 (1), Stats., provides:

"The town boards shall have the care and supervision of all highways and bridges in their respective towns, except as otherwise provided. It shall be the duty of each town board and it is given power:

"(1) To appoint in writing if it deems advisable a superintendent of highways to supervise, under the direction of the board, the construction and repair of said highways. . . . Where no superintendent of highways is appointed, it shall be the duty of the town board to perform all the duties that are prescribed by law for the superintendent of highways to perform."

In this connection see *Wagner v. Milwaukee,* 177 Wis. 410, 188 N. W. 487, and *Shelby v. Miller,* 114 Wis. 660, 664, 91 N. W. 86. The purpose of such statutes, as is well stated in the *Shelby Case, supra,* is to prevent:

"Surrender of that official discretion which the law contemplates shall be bestowed upon every situation in which an officer is required to act."

It appears that the town of Brockway had not appointed a superintendent of highways, and it is evident to us that its public duty of supervising the highways and discharging the town's duty in that regard could not be delegated either to its own chairman or to the chairman of the town of Manchester

or to the town of Manchester itself. In the second place, we are of the view that there was no attempted delegation to the town of Manchester or its chairman of power to enter into a contract with the partnership. What actually occurred was that the chairman of the town of Brockway simply agreed on behalf of the town to reimburse the town of Manchester to the extent of one half the cost of the improvements upon the town-line road. This is quite a different thing from the contract found by the commission and the trial court. We are fortified in this conclusion by the fact that the evidence all points to the fact that the partnership itself did not in any way rely upon the credit of the town of Brockway or consider that it was contracting with that town, although it knew that the town of Brockway was interested in the transaction and that it was going to reimburse the town of Manchester for one half the cost. Under familiar rules of agency, it is entirely competent for an agent, although his agency is known and his principal disclosed, to pledge merely his own personal liability and exclude that of his principal. See 1 Restatement, Agency, § 144, comment *g;* § 146. Where the facts are such as to indicate that this was the intention of the parties, then the principal, even if known, is not a party to the contract. As we construe the facts, that was the situation here. The partners knew of the relation of the town of Brockway to the road and of the negotiations between the chairman of the town of Manchester and the chairman of the town of Brockway with respect to the transaction. It is a fact, however, that the parties were wholly paid by the town of Manchester, expected no money from anybody else, and their understanding was that it was to be just a continuation of the work theretofore done by them for the town of Manchester. It is clear to us that the town of Manchester was the sole contractor with Johnson & West, although it is true that it did not enter the contract until it received assurances by the chairman of the town of Brockway that the latter town assented to the repairs and agreed

to pay for one half of them. The town of Brockway having had no contractual relations with Johnson & West, it follows that sec. 102.06, Stats., does not apply to impose compensation liability upon it in this case. It follows that the judgment must be reversed, and the record remanded with directions to vacate the award against the plaintiffs.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment vacating the award of the Industrial Commission against the plaintiffs.